IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 16, 2016 at Knoxville

**DARYL BOBO v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 11-03987     Chris B. Craft, Judge**

**No. W2016-00477-CCA-R3-PC  -  Filed November 16, 2016**

The Petitioner, Daryl Bobo, appeals from the Shelby County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends that his trial counsel was ineffective (1) in failing to adequately explain to him the terms of a plea offer made by the State; (2) in failing to adequately meet with and prepare him for trial; and (3) for failing to adequately cross-examine the State's witnesses. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Sharon Fortner, Memphis, Tennessee, for the appellant, Daryl Bobo.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melanie Headley Cox, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

The Petitioner was convicted in 2013 of possession with intent to sell 0.5 grams or more of cocaine in a drug-free school zone and possession with intent to sell 0.5 ounces or more of marijuana in a drug-free school zone and received a total effective sentence of sixty years' incarceration. See State v. Daryl Bobo, No. W2013-02008-CCA-R3-CD, 2014 WL 3954066, at *1 (Tenn. Crim. App. Aug. 13, 2014), perm. app. denied (Tenn. Dec. 19, 2014). The evidence at trial established that the Petitioner was seen by a Memphis Police Department (MPD) detective talking to two other men and conducting

what appeared to be a "hand-to-hand" drug transaction with one of the men. Id. As the detective approached the men, the Petitioner "began walking away from the other two men" and went out of his way to avoid the detective. Id. Eventually, the Petitioner entered a nearby Burger King restaurant. Id.

Two other MPD officers followed the Petitioner inside the Burger King. Bobo, 2014 WL 3954066, at *2. The officers saw the Petitioner "immediately" enter the restroom and followed him. Id. Once inside the restroom, the officers saw the Petitioner pull "a black plastic bag" out from one of his pockets "while standing at a urinal." Id. Fearing that the Petitioner was about to dispose of evidence, the officers seized the Petitioner and the bag. Id. The bag contained thirty-seven "baggies" of marijuana, weighing in total 33.5 grams, and six rocks of crack cocaine, weighing in total 1.2 grams. Id. at *2-3. The evidence also established that the Burger King was approximately 700 feet from a nearby high school. Id. Based upon the foregoing, the jury convicted the Petitioner of the offenses listed above. Id. at *3.

A panel of this court affirmed the Petitioner's convictions on direct appeal and our supreme court declined to review that decision. Bobo, 2014 WL 3954066, at *1. On March 3, 2015, the Petitioner filed a pro se petition for post-conviction relief alleging numerous constitutional violations, including ineffective assistance of trial counsel. Shortly thereafter, the Petitioner filed a pro se amended petition for post-conviction relief, specifically alleging that trial counsel "failed to adequately investigate [his] case" and "failed to adequately confer with [him] about the effect that going to trial would have on [his] sentencing."

An attorney was appointed to represent the Petitioner, and she filed a second amended petition for post-conviction relief. The second amended petition alleged several instances of ineffective assistance of trial counsel, including that trial counsel failed to file a suppression motion, failed to "properly investigate," failed to "review [the] Petitioner's legal rights before he made the decision to go to trial" and to sufficiently inform him of the "consequences [of] choosing to go to trial," and failed to "properly communicate with [the] Petitioner and prepare him for trial."

The Petitioner testified at the post-conviction hearing that he and his trial counsel "stayed arguing" about his case. The Petitioner claimed that he would discuss his case with trial counsel and ask trial counsel to investigate certain things or file specific motions but that trial counsel would later say that "he didn't remember anything" about those discussions. The Petitioner also claimed that trial counsel would only meet with him at his court dates or the day before his court dates. According to the Petitioner, trial counsel never met with him while he was in jail, never discussed trial strategy or possible defenses with him, never discussed the sentencing range he faced if convicted, never

provided him with copies of the discovery materials, never responded to any of his letters, never filed any pretrial motions, and never investigated his case.

The Petitioner claimed that trial counsel did not convey any plea offers from the State to him and that he first heard about the State's offer of a twenty-five-year sentence to be served at one hundred percent from the trial court on the day his trial was scheduled to begin. According to the Petitioner, he was allowed to discuss the offer with trial counsel, and trial counsel told him that if he accepted the offer, he would receive a twenty-five-year sentence to be served at thirty-five percent. The Petitioner also claimed that trial counsel listed his sentence as twenty-five years at thirty-five percent on the "guilty plea paperwork." The Petitioner testified that he believed trial counsel was confused about the sentence the State had offered him.

The Petitioner claimed that during his plea submission hearing, the trial court rejected his guilty plea because he "was confused" about the sentence he was to receive. The Petitioner testified that he would have accepted the offer of a twenty-five-year sentence to be served at one hundred percent rather than go to trial. The Petitioner explained that when questioned by the trial court, he insisted his plea agreement was for thirty-five percent service of his sentence because that was what trial counsel had told him and that he ultimately did not accept the offer for one hundred percent service because he "was confused." However, the Petitioner repeatedly stated that he "wanted to prove [his] innocence" at trial because he "did not do" what the arresting officers said he did. The Petitioner further claimed that he would not have attempted to enter a plea agreement if trial counsel had brought "up all [the] evidence to prove [his] innocence" but that trial counsel told him prior to trial that "he wasn't ever trying to get [any] evidence" to help the Petitioner's defense.

Trial counsel testified that the District Public Defender's Office was initially appointed to represent the Petitioner and that he was subsequently appointed after the relationship between the Petitioner and his first attorney deteriorated. Trial counsel testified that he met with the Petitioner on numerous occasions both prior to court appearances and in jail, that he reviewed and explained the indictment to the Petitioner, and that he discussed trial strategy with the Petitioner. Trial counsel admitted that he did not provide the Petitioner with a copy of the discovery materials, but trial counsel stated that he reviewed the discovery materials with the Petitioner in detail. Trial counsel also testified that he filed pretrial motions on behalf of the Petitioner, including a motion to suppress. However, there was no hearing on the suppression motion because trial counsel did not believe that "there was [anything] to suppress."

Trial counsel admitted that he and the Petitioner "argued quite a bit about this case" because the Petitioner insisted that "nobody saw him selling any drugs" while trial counsel tried to explain to him that he had been charged with possessing drugs within

1,000 feet of a school. Trial counsel recalled that the Petitioner wanted him to get video surveillance footage from the Burger King to show that there had been no drug transaction. Trial counsel testified that he had the investigator from the District Public Defender's Office attempt to get the surveillance footage but that "the tapes were not available" by the time he had been appointed. Trial counsel also testified that he personally measured the distance from the Burger King to the school to see if it was within 1,000 feet. According to trial counsel, he brought sketches and photographs to the Petitioner "to show him" the school zone. Trial counsel further testified that he spoke with the State's witnesses and discussed with the Petitioner what he anticipated their testimony would be.

Trial counsel testified that the State's offer from the beginning of the case was for a twenty-five-year sentence to be served at one hundred percent and that he conveyed this offer to the Petitioner. Trial counsel denied ever telling the Petitioner that the offer was for thirty-five percent service. Trial counsel stated that he worked his way up the chain of command of the prosecutor's office, ultimately taking the issue up to the District Attorney General, but that the State's offer never changed. Trial counsel further testified that he advised the Petitioner to accept the State's offer given the sentencing exposure the Petitioner faced if convicted at trial but that the Petitioner's attitude was that "he was not going to take [twenty-five] years for selling drugs."

Trial counsel explained that the trial court had a rule that it would not accept a guilty plea if a case had been scheduled for trial. However, trial counsel was able to convince the trial court to waive that rule and to accept the Petitioner's plea agreement on the day his trial was scheduled to start. However, after being allowed to speak with the Petitioner and reviewing the plea agreement with him, the Petitioner feigned that he believed that his plea agreement was for thirty-five percent service when he was questioned by the trial court. Trial counsel testified that he believed the Petitioner's "attitude and demeanor" during the trial court's questioning were what caused the trial court to reject the Petitioner's plea agreement. Trial counsel explained that the Petitioner "insisted on arguing about what he was charged with" and that he "wasn't selling [any] drugs."

On February 16, 2016, the post-conviction court entered an order denying the petition. The post-conviction court found that the Petitioner had failed to prove his factual allegations that trial counsel had not adequately investigated his case and prepared for trial by clear and convincing evidence. With respect to the proposed plea agreement, the post-conviction court accredited trial counsel's testimony that he conveyed the State's plea offer for twenty-five years to be served at one hundred percent and that he did not tell the Petitioner that his service would be at thirty-five percent. The post-conviction court further noted that the trial court attempted several times to voir dire the Petitioner

about his plea agreement and that in addition to claiming that the offer was for thirty-five percent service, the Petitioner "feign[ed] confusion about his right to testify" and refused to "answer essential questions in a straightforward manner." The post-conviction court concluded that the Petitioner's "attempts to feign confusion during [the voir dire] process were obvious" and that he "knew exactly what the consequences of a guilty plea or his conviction at trial were."

## ANALYSIS

The Petitioner contends that the post-conviction court erred in denying his petition for post-conviction relief. The Petitioner argues that trial counsel was ineffective in failing to adequately explain to him the terms of the plea offer made by the State and in failing to adequately meet with and prepare him for trial. The Petitioner further argues that trial counsel was ineffective for failing to adequately cross-examine the State's witnesses. The State responds that trial counsel's performance was not deficient and that the Petitioner has failed to show any prejudice arising from trial counsel's performance.

At the outset, we note that the Petitioner has submitted an inadequate brief to this court. The Petitioner's brief contains no recitation of the testimony at the post-conviction hearing and only conclusory references to that hearing. As such, we may treat these issues as being waived. See Tenn. R. Crim. Ct. App. 10(b) ("Issues which are not supported by . . . appropriate references to the record will be treated as waived in this court"); see also Tenn. R. App. P. 27(a)(6) (providing that the brief of the appellant "shall contain" a "statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record").

Waiver notwithstanding, post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Here, the post-conviction court accredited trial counsel's testimony that he informed the Petitioner of the State's offer of twenty-five years' incarceration to be served at one hundred percent, that he unsuccessfully worked to get the Petitioner a lesser offer, that he met with the Petitioner numerous times prior to trial, that he reviewed the discovery materials and discussed trial strategy with the Petitioner, and that he never told the Petitioner that the State's offer included thirty-five percent service of his sentence. Nothing in the record preponderates against these findings by the post-conviction court. With respect to the Petitioner's claim that trial counsel failed to adequately cross-examine the State's witnesses, this issue was not raised in his petitions for post-conviction relief or at the post-conviction hearing. Issues raised for the first time on appeal are considered waived. See Charles Orlando Fields v. State, No. W2003-02051-CCA-R3-PC, 2004 WL 1405012, at *5 (Tenn. Crim. App. June 23, 2004). Accordingly, we conclude that the post-conviction court did not err in denying the petition.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE